(No. 81-CC-0859–■■■■■■)

FRANK J. EVEN, Claimant, v. THE STATE OF ILLINOIS, Respondent.

*Opinion filed February 17, 1983.*

EDWARD R. VRDOLYAK, LTD. (WILLIAM J. McGANN, of counsel), for Claimant.

NEIL F. HARTIGAN, Attorney General (SANDRA ANDINA, Assistant Attorney General, of counsel), for Respondent.

POCH, J.

Claimant, Frank J. Even, has brought this action seeking damages for personal injuries and property damage arising out of a collision between his vehicle and a snowplow being operated by Michael J. Kaminen, an employee of the State of Illinois.

The incident occurred on January 21, 1980, at about 9:30 p.m. Claimant was traveling in a westerly direction on Route 120 and approaching its intersection with Route 134, while Michael J. Kaminen was traveling in an easterly direction. Route 120 is a public highway located in Avon Township in Lake County, Illinois. At the time of the incident, Route 120 was covered with ice.

Claimant testified that he had spent the evening visiting friends, and at the time of the accident was on his way home to McHenry, Illinois. When he started for home after 9:00, the roads were slippery. It had rained and was freezing. Due to the hazardous conditions of the road he was traveling between 30 and 35 miles per hour.

He was westbound on Route 120 when he first saw the snowplow eastbound about 100 to 150 feet in front of him. The State vehicle was a dump truck with a salt bed and snowplow attached in front, and as it proceeded toward him it was occupying the entire middle of the roadway.

On seeing the snowplow coming down the middle of the road, he immediately pulled off the road into the ditch of the westbound lane. He assumed that he was hit by the plow of the truck. The car was a total wreck.

Michael J. Kaminen, the driver of the truck, testified that he was driving a three-ton International truck with a

snowplow attached. The plow is approximately three feet high, eight feet wide, runs at an angle and can be lifted and lowered. That evening he was directed to plow snow and spread salt where necessary on his assigned route. At the time of the accident, he was eastbound on Route 120 going towards Grayslake. The temperature had fallen and the road became slippery and icy. Route 120 is a two-lane highway with each lane about 100 feet wide. The left side of his plow was two feet from the center lane and the right side was at the edge of the pavement.

There were automobiles ahead of him and he and the other automobiles were traveling 15 to 20 miles per hour. The road was straight and level. When he first saw Claimant, Claimant's car was the fourth car in a line of oncoming westbound traffic. Claimant's car was starting to fishtail. The front end of Claimant's car was fishtailing back and forth into the east-bound lane. Kaminen watched Claimant from the first time he saw him fishtail to the point of impact. Claimant was traveling sideways down the road. Claimant tried to right the vehicle in a westerly direction and the back end of the car swung into the eastbound lane. Claimant's car from the driver's door to the rear of the car came into contact with the left rear duals of the truck. Neither at the time of the impact nor at any time prior to the impact was any part of the plow or the truck in the westbound lane.

Kaminen stated that he did not apply his brakes prior to the accident because of the icy condition of the pavement, but he tried to angle his truck off to the right. From the first time he saw Claimant until the time of the impact, some part of Claimant's car was in Kaminen's lane.

David Seilinger, one of three occurrence witnesses testified that he was the driver of a pick-up truck travel-

ing 25 miles per hour eastbound on Route 120, when he first became aware of Claimant. Claimant was passing him at a speed of between 40 and 45 miles per hour. When he came upon him again, Claimant was parked crosswise in the middle of the road and Seilinger had to go off the roadway about three or four feet to go around him. The whole road was a sheet of ice. Seilinger had travelled about a quarter of a mile when he was passed by the snowplow travelling eastbound in its own lane, going slow and salting.

In the meantime, Seilinger was watching Claimant in his rear view mirror. Claimant had righted his car and was approaching at a speed of 40 to 45 miles per hour. As the snowplow passed Seilinger, Claimant's car was about 20 to 30 yards to the rear of Seilinger. When the snowplow passed, Seilinger started to slow down because he thought a collision would take place. He watched the collision in his rear view mirror. The collision occurred in the snowplow's lane with the snowplow in its own lane. Seilinger's testimony was corroborated by Wade A. Neivdall and Herman F. Skokie, both of whom were in Seilinger's truck.

The accounts of the three occurrence witnesses vary in certain respects, but taken as a whole substantiate convincingly the testimony of Kaminen, the truck driver, that he was travelling in his own lane and that Claimant fishtailed into the wrong lane and collided with the snowplow.

From the testimony in the record it is clear that Claimant has failed to prove by a preponderance of the evidence that Respondent was guilty of negligence. On the contrary, the preponderance of the evidence, if not the manifest weight of the evidence, is that Claimant's failing to have his car under control and driving on the wrong side of the road was the proximate cause of the accident.

Claim is denied.